UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EILEEN McGUIRE,                          :
                                         :CIVIL ACTION NO. 3:12-CV-1762
          Plaintiff,                     :
                                         :(JUDGE RICHARD P. CONABOY)
          v.                             :
                                         :
PALMERTON HOSPITAL and                   :
LOIS RICHARDS (in her individual         :
and professional capacity),              :
                                         :
          Defendants.                    :
                                         :

---

### MEMORANDUM

Here we consider Defendants Palmerton Hospital and Lois Richards' Motion to Dismiss (Doc. 9) filed on October 1, 2012. With this motion, Defendants seek dismissal with prejudice of all claims in Plaintiff's Second Amended Complaint (Doc. 7) which Plaintiff filed on September 19, 2012. Defendants filed a supporting brief (Doc. 10) with the motion. Plaintiff filed Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 11) on October 17, 2012. With the filing of Defendant's reply brief (Doc. 13) on October 31, 2012, this motion became ripe for disposition. For the reasons discussed below, Defendants' Motion is granted in part and denied in part.

### I. Background[1]

Palmerton and Plaintiff discussed hiring Plaintiff as a CT

---

[1] In her opposition brief (Doc. 11) Plaintiff summarizes facts contained in her Second Amended Complaint (Doc. 7) which we take as true for purposes of Defendants' motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Therefore, the facts in the Background section of this Memorandum are derived mainly from Plaintiff's opposition brief. (Doc. 11 at 1-3.)

Technologist in 2008.  (Doc. 11 at 1.)  Plaintiff, Defendant
Richards, and other employees of Palmerton negotiated the terms of
Plaintiff's employment.  (*Id.*)  Ordinarily, CT Technologists work
pre-assigned shifts, work additional shifts periodically as needed,
and perform "on-call" services.  (*Id.* at 2.)  For "on-call"
services, the employee must report to Palmerton within thirty (30)
minutes of the call.  (*Id.*)  Plaintiff lived more than thirty (30)
minutes from Palmerton.  (*Id.*)  Plaintiff expressly conditioned her
acceptance of employment at Palmerton on having no "on-call"
assignments.  (*Id.*)  Otherwise, she agreed to work any shifts
needed.  (*Id.*)  Defendants agreed to this arrangement and hired
Plaintiff on October 13, 2008, as a "No-Call" CT Technologist, with
Defendant Richards negotiating terms of the hire.  (*Id.*)

     On numerous occasions through 2010 and 2011, Defendant
Richards (Plaintiff's supervisor (Doc. 7 ¶ 5)) and Sylvia Goral,
Director of Human Resources at Palmerton, ordered Plaintiff to work
on the "on-call" schedule.  (*Id.*)  They told Plaintiff that if she
did not report for the on-call assignments, she would be terminated
for "job abandonment."  (*Id.*)  Plaintiff protested but took the on-
call shifts.  (*Id.*)

     Plaintiff and Defendant Richards had a disagreement on June
30, 2011, regarding an order for a CT scan on a patient whose
weight exceeded the limit permitted for the CT table at Palmerton.
(Doc. 7 ¶ 29.)  Plaintiff recommended the scan be performed at

2

another hospital where the CT table had a higher weight threshold which could accommodate the patient.  (*Id.*)  Defendant Richards eventually ordered the scan for the other hospital.  (*Id.*)

On July 19, 2011, Defendant Richards and another Palmerton management employee brought Plaintiff into a meeting.  (Doc. 7 ¶ 44.)  In the meeting, Defendant Richards "accused Plaintiff of 'refusing to perform a scan,' of 'canceling a CT order,' and 'sending a patient to another facility,'" accusations which Plaintiff states Defendant Richards knew were false.  (*Id.* ¶¶ 45-46.)  Plaintiff also avers that Defendant Richards accused her of using profanity, an accusation Plaintiff denies.  (*Id.* ¶ 47.) Defendants terminated Plaintiff on July 20, 2011.  (*Id.* ¶ 48.)

Plaintiff's Second Amended Complaint also contains numerous assertions regarding Defendants ordering Plaintiff to engage in "illegal and unethical healthcare practices."  (Doc. 7 ¶¶ 19-29.) Plaintiff avers that these include violations of the following: Occupational Health and Safety Act ("OSHA"), Nuclear Regulatory Commission Regulations; Pennsylvania Department of Environmental Protection regulations; American Registry of Radiologic Technology ("ARRT") statutory provisions and Code of Ethics; Pennsylvania Professional Nursing Law; and Pennsylvania Health and Safety Code. (*Id.*)

Defendants removed this case from the Court of Common Pleas of Monroe County, Pennsylvania, on September 5, 2012.  (Doc. 1.)

3

Plaintiff had filed a complaint in that court on March 7, 2012. (Doc. 1 ¶ 1.)  On April 5, 2012, Defendants filed a Notice of Removal in the United States District Court for the Eastern District of Pennsylvania, docketed as Case Number 2:12-CV-01718. (*Id.* ¶ 2.)  Plaintiff then filed a motion to remand, which the Eastern District Court granted, remanding the case to the Court of Common Pleas of Monroe County.  (*Id.* ¶ 3.)

Plaintiff filed an Amended Complaint on August 17, 2012, adding a claim for age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). (Doc. 1 ¶ 4.)   Defendants then filed the Notice of Removal removing the case to this Court on September 5, 2012, asserting original jurisdiction over Plaintiff's ADEA claim and supplemental jurisdiction over Plaintiff's remaining claims.  (Doc. 1 ¶ 13.)

As noted above, Plaintiff filed her Second Amended Complaint (Doc. 7), which is the subject of the pending motion to dismiss, on September 19, 2012.  The Second Amended Complaint contains five counts: Count I - Breach of Contract against both Defendants; Count II - Wrongful Termination against both Defendants; Count III - Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* - Disparate Treatment against both Defendants; Count IV - Violation of the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951 *et seq.* against both Defendants; and Count V - Aiding and Abetting Acts of Discrimination Pursuant

4

to 43 Pa. C.S. § 955(e) against both Defendants.  (Doc. 7 at 14-22.)

## *II. Discussion*

### *A. Motion to Dismiss Standard*

In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

When reviewing a complaint pursuant to a defendant's motion to dismiss for failure to state a claim filed under Federal Rule of Civil Procedure 12(b)(6), the court does so in the context of the requirement of Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claims showing that the pleader is entitled to relief."  The "short and plain statement" must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007). *Twombly* confirmed that more is required than "labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual

5

allegation")).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  550 U.S. at 555 (citations omitted).

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.  Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  (citation omitted).

*McTernan,* 577 F.3d at 530.  The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the

6

> complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. [*Iqbal*,
> 129 S. Ct. at 1949.]  Second, a District
> Court must then determine whether the facts
> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief."  *Id.* at 1950.  In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief.  A
> complaint has to "show" such an entitlement
> with its facts.  *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )].  As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint
> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,
> 129 S. Ct. at 1949.  This "plausibility"
> determination will be "a context-specific
> task that requires the reviewing court to
> draw on its judicial experience and common
> sense."  *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts.  As noted above, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

7

**B.    *Defendants' Motion***

As noted above, Defendants seek dismissal of all counts contained in Plaintiff's Complain with prejudice.  We will discuss each in turn.

**1.    Breach of Contract**

Defendants first argue that Plaintiff's breach of contract claim (Count I) of Plaintiff's Second Amended Complaint must be dismissed against Defendant Richards because Plaintiff did not allege a contract between herself and Richards.  (Doc. 10 at 12.) Plaintiff concedes that this claim must be dismissed.  (Doc. 11 at 7.)  Therefore, Count I for Breach of Contract against Defendant Richards is dismissed with prejudice.

Defendants also maintain that Plaintiff's breach of contract claim against Defendant Palmerton Hospital must be dismissed because Plaintiff's allegation that she and Defendant "'negotiated and reached a binding oral employment agreement that explicitly excluded on-call services'" is insufficient in that Pennsylvania is an at-will employment state and no recognized exceptions to the doctrine exist here.  (Doc. 10 at 13-21.)  Defendant explains the doctrine as follows: "'[A]bsent a statutory or contractual provision to the contrary, it is presumed that either party may end an employment relationship at any time, for any or no cause.'" (Doc. 10 at 13 (quoting *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 435 (3d Cir. 1986)).)  Noting that Plaintiff does not

8

allege that Defendants modified her status as an at-will employee when it allegedly promised not to require her to work on-call shifts, Defendants conclude Defendant Palmerton had the right to require Plaintiff to work on-call shifts or terminate her employment.  (Doc. 10 at 13.)  Defendants also argue that, even if there was an initial oral agreement not to require Plaintiff to work on-call shifts, because Plaintiff worked those shifts and was paid to do so, the oral contract was modified "by her acceptance of valuable consideration paid."  (Doc. 10 at 14-15.)

Plaintiff does not refute Defendants' explanation of Pennsylvania's at-will employment doctrine but asserts that she has successfully pled a breach of contract claim.  (Doc. 11 at 3.) Plaintiff relies on the principle that

> Pennsylvania's presumption of at-will employment may only be overcome when the parties form an "express contract, [an] implied in-fact contract (the parties did not intend it to be at-will), and [when] additional consideration [passes] from the employee to the employer (that is, if the employee bestows a legally sufficient detriment for the benefit of the employer beyond the services for which he was hired, a court may infer that the parties intend to overcome the at-will presumption)." *Ruzicki v. Catholic Cemeteries Ass'n of the Diocese of Pittsburgh*, 416 Pa. Super. 37, 41-42[,] 610 A.2d 495 (1992); *see also Robertson v. Atlantic Richfield Petroleum Co., a Div. of Atlantic Richfield Co.*, 371 Pa. Super. 49, 537 A.2d 814 (1987), appeal denied by 520 Pa. 590, 551 A.2d 216 (1988).

(Doc. 11 at 3-4.)  Plaintiff first cites Pennsylvania cases which

have held that an implied contract for a reasonable period of employment exists where an employer induces a plaintiff to sell his home and move his family in order to accept the employment offer. (Doc. 11 at 4 (citing *News Printing Co., Inc. v. Roundy*, 597 A.2d 662 (Pa. Super. 1991); *Cashdollar v. Mercy Hosp. of Pittsburgh*, 595 A.2d 70 (Pa. Super 1991)).)   The period of employment in *News Printing* was approximately three months and in *Cashdollar* sixteen days. (*Id.*)  Plaintiff also asserts that an employee provides sufficient additional consideration when the employee gives up representing other sellers in order to become his employer's exclusive representative.  (*Id.* at 6 (citing *Bravman v. Bassett Furniture Industries, Inc.*, 552 F.2d 90, 93 (3d Cir. 1977)).)

Identifying the issue as "whether or not the Plaintiff was entitled to rely upon assurances that she would have full time employment for a reasonable period of time" (Doc. 11 at 5), Plaintiff avers that her Second Amended Complaint "sets forth more than sufficient allegations to fall within the parameters of the 'contract of employment' cases discussed" (*id.* at 7).

We disagree that Plaintiff's Second Amended Complaint sets out sufficient factual averments to defeat Defendants' motion to dismiss her breach of contract claim.  Plaintiff sets out no facts analogous to those found sufficient to give rise to a contract of employment which would overcome Pennsylvania's at-will presumption: she does not allege that she moved her family, sold her house, or

gave up another job to work exclusively for Defendant Palmerton. (*See* Doc. 7.)  Further, assuming *arguendo* there were such an employment contract here, the associated "reasonable period of time" expectation would be met in that Plaintiff was employed by Defendant Palmerton for two years and eight months compared to the sixteen days and three months found to be "unreasonable."

Because Plaintiff's Second Amended Complaint does not contain facts which would satisfy the at-will exceptions she identifies in her opposition brief, we conclude that dismissal of this claim is proper and Defendants' motion is granted as to Count I.  Based on the legal framework provided, it seems unlikely that Plaintiff will be able to meet the narrow exceptions identified.  However, in an abundance of caution, we will allow Plaintiff an opportunity to amend this claim and dismiss Count I for breach of contract without prejudice as to Defendant Palmerton.

## 2.  Wrongful Termination

Defendants assert Plaintiff cannot maintain a wrongful termination claim against Defendant Richards in her individual capacity because wrongful termination exists only against an employee's employer.  (Doc. 10 at 15 (citing *Hrosik v. Latrobe Steel Co.*, Civ A. No. 94-1361, 1995 WL 456212, at *6 (W.D. Pa. Apr. 25, 1995); *Clark v. Pa.*, 885 F. Supp. 694, 714 (E.D. Pa. 1995)).)  Plaintiff agrees that an individual wrongful discharge claim against Defendant Richards does not exist under Pennsylvania law.

11

(Doc. 11 at 15.)   Therefore, Count II for Wrongful Termination against Defendant Richards is dismissed with prejudice.

Regarding Defendant Palmerton's liability for wrongful discharge, Defendants again rely on Pennsylvania's at-will employment doctrine, noting there are only narrow exceptions based upon matters of public policy.  (Doc. 10 at 15-16.)   As explained by the Supreme Court of Pennsylvania, the Court

> has steadfastly resisted any attempt to weaken the presumption of at-will employment in this Commonwealth.  If it becomes the law that an employee may bring a wrongful discharge claim pursuant to the "public policy" exception to the at-will employment doctrine merely by restating a private cause of action for the violation of some federal regulation, the exception would soon swallow the rule.

*McLaughlin v. Gastrointestinal Spec. Inc.*, 750 A.2d 283, 290 (Pa. 2000).  *McLaughlin* held that

> in order to set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest.  The Plaintiff in some way must allege that some *public policy* of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee.

*Id.* at 289.  Defendants conclude Plaintiff's claim must be dismissed because she has not alleged a reason for discharge consistent with the only public policy exceptions recognized by Pennsylvania courts: 1) wrongful termination for filing a worker's compensation claim; 2) wrongful discharge for filing an

12

unemployment compensation claim, and 3) wrongful discharge for refusing to submit to a polygraph test.  (Doc. 10 at 17 (citing *Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511, 512 (Pa. 2005)).)

Defendants also argue that regardless of the public policy issues Plaintiff asserts are implicated, her discharge was permissible.  (Doc. 10 at 21.)  This argument is based on the assertion that Plaintiff "acknowledges that she was disciplined and terminated for 'using profanity' and 'refusing to perform a scan, . . . canceling a CT order, and sending the patient to another facility.'"  (Doc. 10 at 21 (citing Doc. 7 ¶¶ 41, 45).)

Plaintiff asserts that she has pled a wrongful discharge cause of action against Defendant Palmerton pursuant to the public policy exception.  (Doc. 11 at 10.)  After citing several cases in which the public policy exception was found applicable, Plaintiff argues that *McLaughlin* should be read to "indicate that if a Federal Statute is interwoven into State law, then this Federal law could actually become part of Pennsylvania's public policy."  (Doc. 11 at 12.)

The parties' briefing of this issue demonstrates that Defendants urge a narrow interpretation of the public policy exception and Plaintiff argues for a broader approach.  We conclude that, although the public policy exception is a narrow one, *see*, *e.g.*, *Marsh v. Boyle*, 530 A.2d 491, 495 (Pa. Super. 1987),

recognition of a middle ground is warranted at this stage of the proceedings, particularly in light of the fact that in Pennsylvania, "a case-by-case analysis has been adopted in reviewing a wrongful discharge cause of action." *McGonagle v. Union Fidelity Corp.*, 556 A.2d 878, 884 (Pa. Super. 1989).

Plaintiff's wrongful discharge claim does "more than show a possible violation of a federal statute that implicates only her own personal interest." *McLaughlin*, 750 A.2d 289.  The violations cited in Plaintiff's Second Amended Complaint implicate interests of patients and healthcare workers.  (*See* Doc. 7 ¶¶ 19-27.) However, Plaintiff's Second Amended Complaint falls short in that *McLaughlin* held that "a bald reference to a violation of a federal regulation, without any more articulation of how the public policy of this Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation." 750 A.2d at 290.  Plaintiff's Second Amended Complaint does not articulate what public policy of the Commonwealth of Pennsylvania is implicated.  (*See* Doc. 7.)  In her brief opposing Defendants' motion to dismiss, Plaintiff cites many cases in support of her argument that she has sufficiently pled her wrongful termination claim, but she has not pointed to anything in her Second Amended Complaint to show that her case is either analogous to cited

authority or identifies a specific policy.[2]   (*See* Doc. 11.)

While we agree Plaintiff has not sufficiently pled a wrongful discharge claim, we reject Defendants' position that whistleblowing can *only* be actionable when an employee is under a legal duty to report the acts at issue (Doc. 10 at 19 (citing *Donahue v. Fed. Ex. Corp.,* 753 A.2d 238, 244 (Pa. Super. 2000))), or makes a direct report to the relevant agency (Doc. 13 at 8-9 (citing *Field v. Philadelphia Electric Co.,* 565 A.2d 1170 (Pa. Super. 1989); *Wetherhold v. Radioshack Corp.,* 339 F. Supp. 2d 670 (E.D. Pa. 2004)).)   As to the former, "whistleblowing" comes in all shapes and sizes.   *Donahue* rejected a claim where the plaintiff complained of the employer's "failure to pay invoices and other unscrupulous practices," 753 A.2d at 244, and listed cases where whistleblowing did not support a wrongful discharge claim, *id.,* but alleged illegality directly affecting patient safety was not discussed and may be seen to implicate other Commonwealth policies.[3]   For

---

[2] This conclusion does not mean Plaintiff is precluded from pleading a Commonwealth policy that has not been *specifically* recognized by Pennsylvania courts.  However, to the extent she should decide to seek a novel application of the public policy exception, this should be articulated and analogized.  *See infra* n.3.  We further note the *illegality* of the alleged activity is also central to a wrongful discharge claim: "when the act to be performed turns upon a question of judgment, as to its legality or ethical nature, the employer should not be precluded from conducting its business where the professional's opinion is open to question."  *McGonagle,* 556 A.2d at 885.

[3] As explained in *Donahue,*

example, in *Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734, 741 (E.D. Pa. 2011), the court denied the defendants motion to dismiss where the plaintiff had "an affirmative statutory duty to ensure the safety of residents and employees of the nursing home [and] had a duty to communicate with management and resolve issues regarding resident care."[4]   Similarly, in *Tanay*, the plaintiff

> [i]n an appropriate case, the courts may announce that a particular practice violates public policy, even in the absence of a legislative pronouncement to that effect. *Schick v. Shirey*, 552 Pa. 590, 602, 716 A.2d 1231, 1237 (1998).  On the other hand, a court's power to announce public policy is limited: "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Id.* (citations omitted).

753 A.2d at 243.  *Weaver v. Harpster*, 975 A.2d 555 (Pa. 2009), shows that a plaintiff has a very steep climb in demonstrating a public policy violation which has not been previously recognized:

> In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted.  Rather, it is for the legislature to formulate the public policies of the Commonwealth.  The right of a court to declare what is or is not in accord with public policy exists only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it.  Only in the clearest of cases may a court make public policy the basis for its decision.

*Id.* at 563 (internal citations and quotations omitted).

[4]  *Tanay* is cited only as an example of the potential scope of the public policy exception and not as a case analogous to the case

16

complained only to his employer.[5]

We also conclude that Defendants correctly argue that certain aspects of Plaintiff's wrongful termination claim are clearly foreclosed, including violations of civil rights acts and alleged ethical code violations.  (Doc. 10 at 18-21.)  Plaintiff does not argue otherwise in her opposition brief.  (*See* Doc. 11.)

Having determined that Plaintiff's wrongful termination claim must be dismissed, we must decide whether amendment would be futile.  As noted in the margin, the Plaintiff faces a difficult task making the necessary factual averments to survive a challenge to a wrongful termination claim based on the public policy exception to the at-will employment presumption.  *See supra* n.3. Although this difficulty does not equate with futility, amendment would be futile if we were to agree with Defendants' averment that "Plaintiff acknowledges that she was disciplined for 'using profanity' and 'refusing to perform a scan, . . . canceling a CT order, and sending the patient to another facility.'"  (Doc. 10 at 21 (citing Doc. 7 ¶¶ 41, 45).)  Defendants are correct that Plaintiff did not contest this assertion in arguing against dismissal of her wrongful termination claim in her opposition brief.  (Doc. 13 at 9.)  But that is not the end of our inquiry because Plaintiff avers in her Second Amended Complaint that the

---

at bar.

[5]  *See supra* n.4.

accusations concerning profanity and the other alleged bases for termination were false and the reasons given for her termination were pretextual (Doc. 7 ¶¶ 46, 47, 49).  Therefore, in an abundance of caution, we will allow Plaintiff an opportunity to amend her wrongful termination claim in a manner consistent with the foregoing discussion.

**3.    ADEA Claim**

Defendants first argue that Plaintiff's ADEA claim (Count III) of Plaintiff's Second Amended Complaint must be dismissed against Defendant Richards because no individual liability exists under the ADEA.  (Doc. 10 at 22.)  Plaintiff concedes that this claim must be dismissed.  (Doc. 11 at 8.)  Therefore, Count III for a violation of the ADEA against Defendant Richards is dismissed with prejudice.

Defendants also contend that Plaintiff's ADEA claim against Defendant Palmerton Hospital must be dismissed because she has pled only legal conclusions and speculative averments.  (Doc. 10 at 23.)  For the reasons discussed below, we agree this claim is appropriately dismissed.

The ADEA makes it unlawful for an employer to discriminate against any individual in hiring, termination, compensation, or conditions of employment on the basis of the individual's age.  29 U.S.C. § 623(a)(1).  Where the plaintiff lacks direct evidence of discrimination, an ADEA claim is evaluated under the burden-shifting framework for Title VII cases outlined in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).  This framework places the initial burden on the plaintiff to establish a prima face case of discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  To prevail, the plaintiff must prove, by a preponderance of the evidence, that the defendant's legitimate reason was in fact pretext of discrimination.  *Id.*

The elements of the plaintiff's prima facie case are: 1) the plaintiff is forty years of age or older; 2) the defendant took an adverse employment action against the plaintiff; 3) the plaintiff was qualified for the position in question; and 4) the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.  *Smith*, 589 F.3d at 689 (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).  The Third Circuit Court of Appeals has also allowed that a plaintiff may satisfy the fourth prong of the prima facie case by showing that the employer had a continued need for someone to perform the same work after the plaintiff left.  *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 354 (3d Cir. 1999) (citation omitted).

In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009),

the Court considered whether the ADEA allowed a mixed motive claim, (where a plaintiff claims that she was treated adversely because of both permissible and impermissible reasons) and concluded the statutory text of the ADEA does not authorize mixed motives age discrimination claims.  557 U.S. at 171, 175.  Thus, to establish a disparate treatment claim under the ADEA, a plaintiff must prove that age was the "but-for" cause of the employer's adverse action. *Id.* at 176.  As stated by the Third Circuit Court of Appeals, *Gross* construed the ADEA's statutory language "as requiring the plaintiff to prove but-for causation from the outset of an ADEA case." *Smith*, 589 F.3d at 690 (citing *Gross*, 557 U.S. at 177-78).

Even assuming *arguendo* that Plaintiff's Second Amended Complaint set out the elements of a prima facie age discrimination claim, we conclude this claim fails because Plaintiff's averments foreclose relief under the ADEA.  Plaintiff "believes, and therefore avers, that she was discriminated against because of her age, because she is significantly older than the majority, if not all, the other CT Technologists whom were about age thirty (30) or younger."  (Doc. 7 ¶ 73.)  To the extent this statement is construed as an assertion that Defendants violated the ADEA, it is a legal conclusion contradicted by another averment found in the Second Amended Complaint where Plaintiff states that "Defendants did not terminate other employees for profanity because they were younger and were willing to engage in illegal directives."  (Doc. 7

¶ 54.)  With this averment, in addition to age, Plaintiff provides another reason for her adverse treatment--younger employees were willing to engage in "illegal directives" and she was not.  Thus, Plaintiff essentially states a mixed motives claim--she was treated differently because of age *and* something else.  This statement equates with an admission that age was not the "but-for" cause of the adverse action as required by the statute.  *See Gross*, 557 U.S. at 175-77.  Given this averment, dismissal of Plaintiff's ADEA claim is appropriate.  Although it is unlikely that Plaintiff can overcome this deficiency, in an abundance of caution we will allow her leave to amend.  Therefore, Plaintiff's ADEA claim against Defendant Palmerton is dismissed without prejudice.

**4.   Pennsylvania Human Relations Act Claims**

Defendants assert that Counts IV and V asserting violations of the Pennsylvania Human Relations Act ("PHRA") must be dismissed because Plaintiff has failed to exhaust her administrative remedies, and, to the extent the claims are coextensive with her ADEA claim, she has failed to sufficiently plead an age discrimination claim under the PHRA.  (Doc. 10 at 24-27.)  We agree.

Defendants exhaustion argument is based on the fact that the PHRA contains an exhaustion requirement and the assertion that Plaintiff filed her civil action within the one-year period when the Pennsylvania Human Relations Commission has exclusive

jurisdiction over a claim.  (Doc. 10 at 25 (citing *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 921 (Pa. 1989); 43 Pa. C.S. § 962(c)(1)).)

Plaintiff argues that Defendants' arguments are faulty because "courts have declined to dismiss lawsuits when the one-year period elapses during litigation, instead of dismissing the claim on a technical defect that has since been cured."[6]  (Doc. 11 at 9 (citing *Troendle v. Yellow Freight, Inc.*, Civ. No. 97-2430, 1999 WL 89747, at *7 (E.D. Pa. Feb. 2, 1999); *Violanti v. Emery Worldwide A-CF Co.*, 847 F. Supp. 1251, 1258 (M.D. Pa. 1994)).)  Plaintiff adds that her PHRA claims should not be dismissed for failure to exhaust because "it might be possible for the Plaintiff to ultimately present additional evidence through pretrial discovery to prove that she submitted questionnaires or other verified documents to the PHRC more than one year prior to filing her Second Amended Complaint."  (Doc. 11 at 10 (citing *Pergine v. Penmark Mgmt. Co.*, 314 F. Supp. 2d 486, 490 (E.D. Pa. 2004)).)

Defendants undermine Plaintiff's reliance on *Troendle* and *Violanti* with the assertion that in both cases the courts refused to dismiss the prematurely-filed PHRA claims because more than one year had passed since the plaintiffs' PHRC filings when the

---

[6]  Plaintiff concedes that Count IV is not properly brought against Defendant Richards.  (Doc. 11 at 10.)

exhaustion issue was raised.  (Doc. 13 at 12.)  In contrast, here Defendants raised the exhaustion issue within the one year period. (Doc. 13 at 13.)  Defendants also assert that the Court should dismiss Plaintiff's PHRA claims because her filing of the civil action only two months after filing her PHRC administrative charge "does not evidence a 'good faith use of procedures provided for the disposition of the [PHRA] complaint.'" (Doc. 13 at 14 (citing *Lyons v. Springhouse Corp.*, Civ. A. No. 92-6133, 1993 WL 69515, at *3 (E.D. Pa. Mar. 10, 1993)).)  Finally, Defendants urge the Court to reject Plaintiff's request to be afforded discovery on the issue as it was Plaintiff herself who submitted the documents to the PHRC. (Doc. 13 at 14.)

We agree with Defendants that Plaintiff failed to exhaust her administrative remedies regarding her PHRA claims, Counts IV and V of her Second Amended Complaint.  Further, Plaintiff has failed to show how this failure falls into the category where exhaustion should be excused.  Therefore, Plaintiff's PHRA claims are dismissed with prejudice.

### III. Conclusion

For the reasons discussed above, Defendants Palmerton Hospital and Lois Richards' Motion to Dismiss (Doc. 9) is granted in part. It is denied to the extent that certain claims are dismissed without prejudice.  Count I for breach of contract is dismissed

with prejudice as to Defendant Richards and dismissed without prejudice as to Defendant Palmerton.  Count II for wrongful termination is dismissed with prejudice as to Defendant Richards and dismissed without prejudice as to Defendant Palmerton.  Count III for age discrimination under the ADEA is dismissed with prejudice as to Defendant Richards and dismissed without prejudice as to Defendant Palmerton.  Counts IV and V for violations of the PHRA are dismissed with prejudice.  An appropriate Order is filed simultaneously with this action.  Should Plaintiff choose to do so, an amended complaint is to be filed within fourteen (14) days of the date of this Memorandum and simultaneously filed Order.

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

DATED: November 13, 2012

24